## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FIRST COLONY INSURANCE COMPANY**                    **CIVIL ACTION**

**VERSUS**                                            **NO. 05-6849**

**ALFRED KREPPEIN, et al.**                           **SECTION "T"(1)**

### ORDER & REASONS

Before the Court are defendant Alfred Kreppein and defendants Ryan Crane and Laurel Luquette's Cross Motions for Summary Judgment. [Rec. Doc. No. 83, 85]. On June 26, 2007, Judge Zainey ordered the parties to proceed in this litigation with cross-dispositive motions exclusively on the issues of: 1) effect of the temporary restraining order on the change of beneficiary of the life insurance policy, 2) the mental capacity of the deceased and 3) breach of contract in changing the listed beneficiary. [Rec. Doc. No. 96] The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

**I.        BACKGROUND**

This case surrounds a dispute over decedent Stephanie Boyter Kreppein's insurance proceeds between the decedent's ex-husband, Alfred Kreppein ("Mr. Kreppein"), and the decedent's children, Ryan Brice Crane and Laurel Crane Luquette ("Crane" and "Luquette").

The decedent and Mr. Kreppein were married in November, 2000.  Subsequently, each of them purchased a life insurance policy naming the other as the sole beneficiary. Mrs. Kreppein named Crane and Luquette as Contingent Beneficiaries of her policy.  (Rec. Doc. No. 25-2, p. 1). On July 28, 2005, the decedent moved out of her home with Mr. Kreppein to Baton Rouge with members of her family. (Rec. Doc. No. 85, p. 3).  On August 2, 2005, Mr. Kreppein filed a petition for divorce from the decedent. Id. Subsequently, on August 29, 2005, First Colony received a Policy Change Form, signed by Mrs. Kreppein, revoking all prior beneficiary designations and designating Crane and Luquette as the Primary Beneficiaries under the Policy. (Rec. Doc. No. 25-2, p. 2).  Mrs. Kreppein died on October 11, 2005.

Under the applicable policy, upon the death of the insured, First Colony became obligated to pay the sum of $500,000, plus applicable interest, to the person/s rightfully entitled to the death benefit. On December 27, 2005, Plaintiff First Colony Life Insurance Company ("First Colony") filed a Complaint for Interpleader (Rec. Doc. No. 1) pursuant to Rule 22 of the Federal Rules of Civil Procedure to determine the rightful beneficiary/beneficiaries of the insurance proceeds. After depositing the funds into the registry of the court, First Colony filed a motion for summary judgment which was granted by Judge Zainey on January 25, 2007. (Rec. Doc. No. 57).   Judge Zainey dismissed First Colony from the suit, except for the limited issue of

2

entitlement of attorney's fees and costs, which is still pending before this Court on Objection

from the Magistrate's Ruling.  (Rec. Doc. No. 91).

## II.    STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the

record discloses no genuine issue as to any material fact such that the moving party is entitled to

judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co.

v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat

an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely

colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50

(citations omitted).  Summary judgment is also proper if the party opposing the motion fails to

establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986).  In this regard, the non-moving party must do more than simply deny the allegations

raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646,

649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits

or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not

qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d

547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must

read the facts in the light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.

Judge Zainey instructed the parties to support the cross-dispositive motions for summary

judgment with evidence concerning the decedent's mental capacity, the issue of whether the

decedent had "contracted away" her right to change the beneficiary on her policy, and the effect

of the TRO.  As such this Court will now turn to those issues.

## II.    CONTRACTUAL CAPACITY

Mr. Kreppein suggests that the decedent lacked the required contractual capacity at the

time that she changed the beneficiary of her life insurance policy.  His affidavit states that "she

was unable to perform routine tasks," "she began to lose her ability to think," and "she could not

remember people she had known for long periods of time." [Rec. Doc. No. 85-6].   The affidavit

of the insurance agent who procured the policies for the Kreppeins states that on July 29, 2005,

the decedent, her mother and another woman came to see him about changing the beneficiary on

the insurance policy.  The agent, Terry Sullivan states "[a]t the time, it was clear that Stephanie

was not able to understand or comprehend what was going on....She smiled sweetly but did not

recognize me or seem to comprehend anything that I said."  (Rec. Doc. No. 85-6, p. 7).

However, the decedent was not interdicted by law at the time of her death, and it is well

settled that the law presumes contractual capacity.  <u>Standard Life & Acc. Ins. Co. v. Pylant</u>, 424

So.2d 377 (La.App.2d Cir.1982). Exceptions to the presumption of capacity to contract must be

shown quite convincingly and by the great weight of the evidence. <u>First Nat. Bank of Shreveport</u>

<u>v. Williams</u>, 346 So.2d 257 (La.App.3d Cir.1977); <u>Kennedy v. Bearden</u>, 471 So.2d 871

4

(La.App.2d Cir.1985).  Therefore, to determine whether the change of beneficiary should be nullified due to lack of contractual capacity, the Court looks to Louisiana Civil Code Article 1926:

> A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death.

La. Civ. Code Art. 1926. The changing of a beneficiary under a life insurance policy is not a gratuitous contract,  Martin v. Metropolitan Life Ins. Co., 516 So.2d 1227, 1229 (La. Ct. App. 2nd Cir.1987)(citing Standard Life Ins. Co. v. Taylor, 428 So.2d 1294 (La.App.3d Cir.1983); Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (La.1930));  there was no application for interdiction filed before the decedent's death; and the Change of Beneficiary Form signed by the deceased was executed on August 22, 2005, more than thirty days before the decedent's death.

Therefore, the only way that the decedent's Change of Beneficiary Form can be challenged for lack of capacity is if it "evidences a lack of understanding."  There is no evidence that the contract itself "evidences a lack of understanding." The Policy Change Form bears the decedent's signature and clearly sets forth a change of beneficiary from Mr. Kreppein to a 50% interest in Ryan Crane and a 50% interest in Laurel Crane Luquette.  [Rec. Doc. No. 83-8, p. 56]. Furthermore, the sworn affidavit of Mary Elizabeth Perry, who witnessed the signing of the document notes that the decedent "made it clear it was something she wanted to do.  She expressed understanding concerning the implications of signing the Change of Beneficiary Designation Form."  [Rec. Doc. No. 83-6, p. 41].  As such, there is insufficient evidence to overcome the presumption that the decedent had contractual capacity at the time she executed

the Policy Change Form document. [1]

## III.   RECIPROCAL INSURANCE OBLIGATION

Mr. Kreppein argues that even if the decedent did not lack contractual capacity to change the insurance policy beneficiary, she was precluded from doing so because she and Mr. Kreppein had mutually contracted away their rights to change the beneficiary of their respective policies. Mr. Kreppein states in his affidavit: "Stephanie and I had specifically agreed to secure two insurance policies on each other's lives to enable us to pay debts which we were continuing to incur as a result of business and other property we purchased during our marriage." (Rec. Doc. No. 85-6, p. 3). The two allegedly agreed that the proceeds of the respective policies would reciprocally ensure each other and there would be "no change regarding the insurance policies or beneficiaries." Id.

The only evidence that Mr. Kreppein has to attest to this seemingly oral agreement to reciprocally insure was Mr. Kreppein's own affidavit and that of Terry Sullivan, the agent who helped the Kreppeins procure their policies. Terry Sullivan states in his depositions: "Al was aware that I had an insurance license and he indicated that he and Stephanie wanted to discuss obtaining life insurance policies that would protect each of them in the event of the death of the other." (Rec. Doc. No. 85-6, p. 6).

The decedent's insurance policy states that the "Owner may change the designations of

---

[1]It is also noteworthy that on July 11, 2007, Judge Kern A. Reese of the Civil District Court for the Parish of Orleans, in an extensive Reasons for Judgment held that Mr. Kreppein did not overcome the presumption of testamentary capacity in his challenge to the decedent's revocation of Mr. Kreppein as the executor of her will. See Rec. Doc. No. 99, Written Reasons of Judgment in the Succession of Stephanie Boyter Kreppein. That court, while determining the decedent's capacity in revoking a testament, which took place on a different occasion than the Change of Beneficiary, examined much of the same evidence that is before this Court and likewise found it insufficient to overcome the heavy burden placed on those seeking to nullify a testament.

Owner, Contingent Owner, and Beneficiary during the insured's lifetime.  Any change is subject to the consent of an irrevocable beneficiary." (Rec. Doc. No. 83-8, p. 35).  There is no indication in the policy nor any argument made by either party that Mr. Kreppein was made an "irrevocable beneficiary" under the policy.  Without a designation of an irrevocable beneficiary, the decedent would be free to change the beneficiary under the policy at any time before his or her death.  If the Kreppeins had truly intended to contract out of their right to change the designation of beneficiary, each should have designated the other as "irrevocable beneficiary" under the policy. If they had done so, any change to the policy beneficiary could only be made with the irrevocable beneficiary's consent.

It is well settled in Louisiana law that the owner of an insurance policy, usually also the insured, has the right to change the designation of the beneficiary of his or her policy under the terms of the policy without the consent of the original beneficiary.  15 La. Civ. L. Treatise, Insurance Law & Practice § 256 (3d ed.).  This is because absent a conventional agreement, "no one has the vested right to the status of a beneficiary under a life insurance contract, if the contingent event which vests such right, the death of the insured, has not occurred; until then, the parties to the insurance contract are free to change the beneficiary, if such a change is permitted by its terms."  Jackson Nat. Life Ins. Co. v. Kennedy-Fagan, 873 So.2d 44, 49 (La. Ct. App. 1st Cir. 2004).

Such a case is present here.  Mr. Kreppein has adduced no evidence that the deceased sought to designate him as an irrevocable beneficiary. Furthermore, he has failed to introduce any evidence, other than his own testimony and the generalized testimony of his insurance agent, Terry Sullivan, that the deceased intended to enter into a binding conventional obligation to

maintain Mr. Kreppein as the beneficiary of her policy.

## IV.   EFFECT OF THE TEMPORARY RESTRAINING ORDER

Mr. Kreppein's third basis for requesting this Court deem the decedent's Change of
Beneficiary ineffective is the existence of a temporary restraining order (TRO) that he argues
was in effect at the time of the change of beneficiary that would apply to the First Colony life
insurance policy.  The TRO in question was signed by Judge Ethel Simms Julien on August 2,
2005.  The TRO states:

> [the] temporary restraining orders issue directed unto the defendant, **Stephanie
> Boyter Kreppein,** restraining, enjoining and prohibiting **Stephanie Boyter
> Kreppein**, or any other persons, entities, firms, corporations or partnerships
> acting or claiming to act in **Stephanie Boyter Kreppein's** behalf from in any
> manner whatsoever alienating, encumbering or disposing of any or all of the
> assets of the community of aquets and gains between them; and, from borrowing
> against the cash surrender values, or from changing the ownership and/or
> beneficiaries of any policies of life insurance insuring the lives of either of the
> parties hereto, all without bond.

Rec. Doc. No. 85-6, p. 16.  The TRO further orders Stephanie Boyter Kreppein to show cause on
the 16th of August, 2005 why a preliminary injunction should not be issued, why she should not
return the funds removed from community and separate bank accounts, and for all other
equitable relief to which Mr. Kreppein is entitled.  Id.

The Louisiana Code of Civil Procedure provides the procedure for obtaining a temporary
restraining order. La. Code Civ. Pro. Art. 3604.  There is no disputed fact as to whether or not
the TRO was validly issued in this case.  The TRO was properly endorsed, signed by the Judge,
filed by the Court, and otherwise met the requirements of Article 3604.  However, the issue that
is in dispute is whether or not the TRO was still in effect at the time Mrs. Kreppein changed the
beneficiary of her life insurance policy, and whether that TRO, if still in effect, extended to the

life insurance policy.

The Code also provides that a TRO *shall expire by its terms within such time after entry, not to exceed ten days*. La. Code Civ. Pro. Art. 3604. (emphasis added).  In this case, the TRO was signed by the Judge on August 2, 2005, and served on Mrs. Kreppein on August 12, 2005. A TRO is considered *effective against the parties* from the time that they receive actual notice of the order, by personal service or otherwise.  La. Code Civ. Pro. Art. 3605. (emphasis added).

Mr. Kreppein argues that Mrs. Kreppein was served with the notice of the TRO on August 12, 2005, and therefore, that is when the TRO took effect.  As such, Mr. Kreppein argues that the TRO was effective for 10 days, and when Mrs. Kreppein attempted to change the beneficiary of her policy on August 22, 2005, she was doing so in violation of a court order. Rec. Doc. No. 85-2, p. 4-5, Rec. Doc. No. 88, p. 3.  However, the service of process of the TRO or the notice thereof does not change the length or the start date of the effectiveness of the TRO. The date of notice or service merely serves to indicate the time at which the parties' compliance is required.   Therefore, since the TRO could be in effect no longer than 10 days *after entry*, the TRO expired by its own terms on August 12, 2005, the day that it was served on Mrs. Kreppein.

Furthermore, the August 16, 2005 Rule to Show Cause came and went without a hearing on the matter.  Article 3606 states: The party who obtains a temporary restraining order shall proceed with the application for a preliminary injunction when it comes on for hearing. Upon his failure to do so, the court shall dissolve the temporary restraining order. La. Code Civ. Pro. Art. 3606.  See also, Austin v. Currie, 134 So. 723 (La. Ct. App. 2d. Cir. 1931)(temporary restraining order, where not extended, expired on date fixed to show cause why preliminary injunction should not issue).

There is some evidence that the parties intended to request a continuance from the Court for their hearing on the preliminary injunction.  <u>See</u> Rec. Doc. No. 85-6, p. 20-21.  However, this Motion to Consolidate and Motion for Continuance was never signed by Sandra S. Salley, counsel for Mr. Kreppein, never signed by the Judge, and never filed with the Court.  <u>See</u> Rec. Doc. No. 85-6, p. 20-21.  Therefore, the hearing date was never effectively continued. Furthermore, even if the Court were to consider the agreement to continue effective, the agreement continued the hearing date on the preliminary injunction but did not reinstate the TRO which had already expired.  Plaintiff's argument that the TRO stayed in effect from its issuance on August 2, 2005 until the decedent's death on October 11, 2005  is clearly in contrast to well established law that a temporary restraining order should not be kept in effect for many months without making it a temporary injunction. <u>Metalock Repair Service v. Harman</u>, 1954, 216 F.2d 611 (6th Cir. 1954).

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of Ryan Brice and Laurel Crane Luquette be **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed on behalf of Alfred J. Kreppein, Jr. be **DENIED**.

New Orleans, Louisiana, this 24th  day of August, 2007.

**UNITED STATES DISTRICT JUDGE**
**G. THOMAS PORTEOUS, JR.**